UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
  KYLE EIKLOR,

                    Plaintiff,                                **DECISION**
                                                     **AND ORDER**
     -against-                                  2:21-cv-05082 (GRB)(JMW)

  LOWE'S HOME CENTERS, LLC d/b/a
  BAY SHORE LOWE'S,

                    Defendant.
------------------------------------------------------------X

**A P P E A R A N C E S:**

James M. Marino
Neil Moldovan
**Law Office of Neil Moldovan, P.C.**
900 Stewart Avenue, Suite 220
Garden City, NY 11530
*For Plaintiff*

Kenneth L. Bostick, Jr.
**Goldberg Segalla LLP**
665 Main Street
Buffalo, New York 14203-1425
*For Defendant*

**WICKS,** Magistrate Judge:

       In this removed personal injury action, Plaintiff Kyle Eiklor alleges that, on or about June 13, 2020, while Plaintiff shopped at Defendant Lowe's Home Centers, LLC d/b/a Bay Shore store, Plaintiff was struck on the head a heavy plywood sign and sustained injuries therefrom. (DE 1-1.)  Plaintiff alleges that Defendant was negligent, shown by its failure to properly monitor the area, warn of dangers, and keep the area safe for use.  (*Id.*)

1

Before the Court is Plaintiff's motion to compel certain documents and responses related to Demands #2, #8, and #16 of Plaintiff's Fifth Request for Production. (DE 19.) For the following reasons, Plaintiff's motion to compel is GRANTED in part and DENIED in part.

## DISCUSSION

Plaintiff seeks to compel: (1) Defendant's responses to Plaintiff's Fifth Request for Production without the use of boilerplate language; (2) the production of Defendant's daily inspection and safety reports from May 20, 2020, through July 20, 2022, in response to Demand #2; (3) the production of four withheld emails between Lowe's Asset Protection Safety Manager Timothy Hahn ("Hahn") and his superiors with respect to Hahn's initial investigation and video surveillance collection in response to Demand #8; and (4) video footage demonstrating the view of a certain surveillance camera in response to Demand $16. (*Id.*) The Court addresses each request in turn below.

### A. Defendant's Objections to Plaintiff's Requests

Plaintiff contends that Defendant asserted boilerplate language in each of its responses and objections to Plaintiff's Fifth Request for production. (DE 19.) According to Plaintiff, Defendant's responses recite the timeworn standard and commonplace objections without any explanation, substantiation, or even logs which might identify which of the demanded documents or items were worthy of such objections.

To the contrary, posits Defendant, arguing that its objections are in fact not general objections, but rather carefully tailored to each specific request. (DE 20.) Defendant argues that while it uses consistent language in its responses, it appropriately stated whether responsive documents were located or whether documents were being withheld on the basis of its objection.

2

(*Id.*)  Indeed, the only documents withheld are four emails on the basis of privilege.  (*Id.*; *see* Section C, *infra*.)

"'[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy' while producing 'no documents and answering no interrogatories are a paradigm of discovery abuse.'" *Carl v. Edwards*, No. 16-CV-3863 (ADS) (AKT), 2017 WL 4271443, at *4 (E.D.N.Y. Sept. 25, 2017) (quoting *Jacoby v. Hartford Life & Accident Ins. Co.*, 254 F.R.D. 477, 478 (S.D.N.Y.2009)).  "The party objecting to the discovery demands must, with some degree of specificity, illustrate the nature and extent of the burden of production." *Barella v. Vill. of Freeport*, 296 F.R.D. 102, 105 (E.D.N.Y. 2013).  The timeworn phrases of "overbroad", "undue burden", "vague" and "ambiguous" are not a safe harbor to one seeking to avoid production.  Rather, those objections – if genuine – must be supported by a degree of specificity as to *why* they might be overbroad, an undue burden, vague or ambiguous.

Here, a review of Defendant's responses reveals that Defendant stated specific objections and responses to each request, produced responsive documents, and further provided a privilege log for any withheld documents.  (*See* DE 19-2.)  It cannot be said that Defendant's objections amount to a "blanket refusal to participate in discovery" or a "paradigm of discovery abuse."  *See Freydl v. Meringolo*, No. 09 CIV. 07196 BSJ, 2011 WL 2566087, at *4 (S.D.N.Y. June 16, 2011) (granting motion to compel answers to interrogatories and production of documents where defendant asserted boilerplate objections to every request made in the plaintiff without answering any interrogatory or producing any document).  Accordingly, the branch of Plaintiff's motion seeking an order directing Defendant to, in essence, provide supplemental explanatory responses to Plaintiff's Fifth Request for Production, is hereby denied.

3

## B. Demand #2: Daily Inspection and Safety Reports

Plaintiff requests complete copies of the daily inspection and safety reports from May 20, 2020 through July 20, 2020 concerning the Defendant's hardware department where the alleged incident occurred. (DE 19.)[1] Plaintiff contends this request is reasonable in time and scope as the reports are necessary to determine the requirements for inspections and whether Defendant's employees inspected the hardware department and the sign which allegedly struck Plaintiff in the head. (*Id.*)

Defendant objects to Demand # 2 on the grounds that it is overbroad insofar as it requests reports for a month prior to and after the alleged accident. (DE 20.) However, notwithstanding its objection, Defendant produced the requested daily reports from June 6, 2020, through June 13, 2020, covering the one-week period leading up to and including the date of the alleged incident. (*Id.*) Plaintiff argues this is insufficient. (DE 19.)

"Motions to compel are left to the court's sound discretion." *E.g.*, *Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016); *see Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

The permissible scope of the discovery is clear:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

---

[1] According to the Complaint, the alleged incident occurred on June 13, 2020. (DE 1-1.)

4

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Moreover, "[t]he party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994); *see also Mandell v. The Maxon Co., Inc.*, No. 06 Civ. 460, 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007) ("[T]he party seeking discovery bears the burden of initially showing relevance."). Discovery sought by the parties, pursuant to Rule 26, must be proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses. *Sibley v. Choice Hotels Int'l*, CV 14-634 (JS)(AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).

Here, Defendant explains that its employees conduct a daily safety review of each department in the store. (DE 20.) Using an electronic device, such as an iPad, the employee views a checklist of items to observe in each department and is provided an option for the reviewing employee to indicate that the review task is completed and to further state whether any corrective action was taken. (*Id.*) It is clear that under these circumstances, daily inspection and safety reports for the hardware department are responsive and relevant to determining the Defendant's alleged negligence. However, Plaintiff has failed to articulate how two months of reports, spanning a month prior to and after the alleged incident, would reveal information relevant to the claims and defenses in this case. As Defendant aptly points out, any reports subsequent to the incident are irrelevant to issues of notice and generally, inadmissible to establish negligence as

5

subsequent remedial measures. *See D'Nelson v. Costco Wholesale Corp.*, No. 03 CV 219 (CLP), 2007 WL 914311, at *5 (E.D.N.Y. Mar. 23, 2007) (citing Fed. R. Evid. 407) (evidence of subsequent remedial measures is not admissible to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction). Defendant has produced a week's worth of safety and inspection reports for the week prior to and including the day of the alleged incident. Plaintiff offers no explanation as to why reports from any earlier are relevant to the claims or defenses in this action. The production was proportional to the needs of the case.

To the extent Plaintiff contends that Defendant's production is "heavily redacted," Defendant explains that it has produced all unredacted reports of the hardware department and only the redacted portions relate to departments outside the hardware department appearing on the same form. (DE 20; *see* DE 19-2.) Plaintiff has not demonstrated why it should be entitled to reports generated from other departments outside the hardware department. For these reasons, the branch of Plaintiff's motion which seeks to compel additional information in response to Demand # 2 is hereby denied.

### C. Demand #8: Emails between Defendant's Employees

Demand #8 seeks communications between Hahn and his superiors concerning his initial investigation of the incident including communications related to his collection of video surveillance. (DE 19.) Defendant has identified four responsive emails which it has withheld on the grounds of the attorney-client and work product privileges. (DE 19-2.) Defendant accompanied its response with a privilege log listing for each withheld email the date it was sent, author, recipient(s), subject matter of the email, and nature of privilege asserted, in compliance with this Court's Local Rules.[2] (*Id.*, Exhibit B.) The privilege log covers four emails, sent

---

[2] Defendant's privilege log complies with this Court's Local Rules. Specifically, Local Rule 26.2(a)(2)(A) provides that the following criteria is to be included in a privilege log:

between Hahn, Deborah Dorsey ("Dorsey"), Lowe's Risk Management Claims Examiner, and Douglas Breindl ("Breindl"), Lowe's Store Manager. (*Id.*) As per the log, each of the emails were sent between June 16, 2020, and June 21, 2020; all emails are listed as "Attorney Client and Work Product" privileged.

Plaintiff argues that Defendant's assertion of privilege over the emails is "misplaced." (DE 19.) Plaintiff argues the emails are "dual purpose" documents because it is in Defendant's regular course of business to have employees collect accident-related video as part of its accident investigations. (*Id.*) Plaintiff argues that Hahn testified as to the existence of a video surveillance camera which recorded events at the entrance of the aisle where the incident occurred but could not recall whether he viewed the video, however Defendant has not produced video surveillance of the aisle where the incident occurred. (*Id.*) Plaintiff contends that it is entitled to know the full extent of Defendant's initial investigation. (*Id.*) In the alternative, Plaintiff requests that the Court view the emails *in camera*. (*Id.*)

In opposition, Defendant contends that these emails are protected as work-product because they involve an investigation triggered by the Risk Management Department in anticipation of litigation, rather than the course of doing business.[3] (DE 20.) Defendant asserts

---

> For documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other[.]

Courts in this circuit have approved privilege logs similar to the one produced by the Defendant here. *See, e.g.*, *Robinson v. De Niro*, No. 19CV9156LJLKHP, 2022 WL 704922, at *3 (S.D.N.Y. Mar. 9, 2022) (approving a log which included: the document control number, date of the document, author(s), recipient(s), general subject matter, a general description of the document, and the privilege(s) asserted).

[3] Although Defendant originally objected on the grounds of both the attorney-client and work product privileges, having not advanced any argument as to why the emails are subject to the attorney-client privilege it appears that Defendant has abandoned its position on that ground. Nonetheless, the record does not support a finding that these emails were sent for the purpose of obtaining, or providing, legal

7

that it has produced surveillance video of the Plaintiff, an incident report prepared in connection with the incident, and pictures gathered by employees after the incident because those were materials gathered in the ordinary course of business and pursuant to Defendant's policies. (*Id.*) But the subject emails are "different" because they involve the Risk Management Department which only gets involved at the prospect of litigation. (*Id.*)

Pursuant to Rule 26, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).[4] In the Second Circuit, a document may be eligible for work product privilege where "the document can fairly be said have been prepared… *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1204 (2d Cir. 1998). "The mere contingency that litigation could result is not sufficient to trigger protection under the work product doctrine." *Steele v. Costco Wholesale Corp.*, No. 20-CV-030713 (NG) (MDG), 2004 WL 7331728, at *2 (E.D.N.Y. Nov. 19, 2004). Documents prepared in the ordinary course of business are not protected by the work product privilege and so to invoke the privilege a party must be able to "point to a definite shift from acting in its ordinary course of business to acting in anticipation of litigation." *Danza v. Costco Wholesale Corp.*, No. 11-CV-4306 (JG) (VVP), 2012 WL 832289, at *1 (E.D.N.Y. Mar. 12, 2012). "As a result, accident reports are not

---

advice and thus are not subject to the attorney-client privilege. *See In re Erie*, 473 F. 3d 413, 418 (2d Cir. 2007); *Steele v. Costco Wholesale Corp.*, No. 20-CV-030713NGMDG, 2004 WL 7331728, at *1 (E.D.N.Y. Nov. 19, 2004) (rejecting attorney-client privilege argument from defendant that an incident report, prepared by a warehouse manager and defendant's liability department, because it did not involve privileged legal advice).

[4] The work-product privilege can apply to material prepared by non-attorneys so long as it is prepared exclusively and in response to imminent litigation. *See Steele v. Costco Wholesale Corp.*, No. CV20030713NGMDG, 2004 WL 7331728, at n. 1. (E.D.N.Y. Nov. 19, 2004).

routinely shielded from discovery." *Id.* Typically, reports generated for the "investigation and evaluation of claims" have been found to be part of the regular course of business.[5] *Steele*, 2004 WL 7331728, at *3 (E.D.N.Y. Nov. 19, 2004).

"A party asserting the work-product doctrine as a bar to discovery bears the burden of establishing the applicability of the doctrine." *Danza*, 2012 WL 832289, at *1. "The party resisting discovery must 'demonstrate by specific and competent evidence that the documents were created in anticipation of litigation.'" *Steele*, 2004 WL 7331728, at *2 (citing *Weber v. Paduano*, No. 02 CIV. 3392 (GEL), 2003 WL 161340, at *4 (S.D.N.Y. Jan. 22, 2003)).

Defendant has failed to demonstrate by specific and competent evidence that the emails between Kahn, Dorsey, and Breindl were actually created in anticipation of litigation. In support of its position that the emails are immune from discovery under the work-product doctrine, Defendant relies on *Gray v. Denny's Corp.,* No. 5:09-CV-746 (NPM) (ATB), 2010 WL 11566295 (N.D.N.Y. May 19, 2010). In *Gray*, the plaintiff commenced an action against Denny's Corporation ("Denny's") after a physical assault at one of Denny's restaurants. *Id.* at *1. One week after the accident, the plaintiff's boyfriend "[went] back to the restaurant and advised [its employee that plaintiff] was going to file a lawsuit against Denny's for failing to protect her." *Id.* at *3. Based on that information, Denny's retained a third-party to investigate the incident and provide a liability report. *Id.* Ultimately, the court held that these documents were made "because of the prospect of litigation," rather than "in the ordinary course of doing business." *Id*. (citing *Adlman*, 134 F.3d at 1202).

---

[5] This is especially true in the insurance context or in circumstances where a company's liability department acts as its liability insurer. *See id.* It is unclear from the parties' submissions whether Defendant is self-insured, however, the Court notes that in Hahn's deposition testimony, when discussing the instruction to collect video surveillance footage, Hahn and Plaintiff's attorney refer to the instructing party as the "claims adjuster." (DE 19-4 at pp. 81-84.)

9

*Gray* is distinguishable on its face from the facts here. Unlike in *Gray*, the Defendant has not demonstrated that the emails from Defendant's Risk Management department were prompted by an event like Plaintiff threatening suit or as a result of other evidence which would suggest litigation was anticipated. According to Defendant, the Risk Management Department served the same function as the third-party investigator in *Gray*. (DE 20.) However, unlike the warning given by the plaintiff's brother in *Gray* that a lawsuit was imminent, Defendant cannot point to an instance which marks a "definite shift" from Defendant acting in its ordinary course of business to acting in anticipation of litigation. *See Danza*, 2012 WL 832289, at *1. Additionally, though not dispositive, the fact that the Risk Management Department first intervened only three days after the incident tends to show that the emails were sent in ordinary course of business, rather than in anticipation of litigation. *See Steele*, 2004 WL 7331728, at *3 (noting that quick preparation of an investigation report demonstrates that it was in the ordinary course of business). It is more likely that the emails were sent as part of Defendant's perscrutation or fact-finding so that it could evaluate potential claims that may ultimately, at a later time, ripen into litigation. *See Danza*, 2012 WL 832289, at *2 ("The defendant itself, being self-insured, likens the document to an investigatory report prepared by or for an insurer. Such reports prepared shortly after an accident do not qualify for work-product protection); *Steele*, 2004 WL 7331728, at *2 ("Generally, courts have found accident reports generated for the investigation and evaluation of claims to be part of the regular, ordinary and principal business of insurance companies") (quotes omitted). Indeed, Defendant admits that the function of the Risk Management Department is that of "fact gathering." (DE 20.) The mere fact that litigation *could* result from the incident is insufficient to confer protection under the work product doctrine. *Steele*, 2004 WL 7331728, at *2. Moreover, to the extent Defendant contends that the

10

communications between Kahn and the Risk Management Department occurred because an "injury claim" had been submitted, Defendant utterly fails to demonstrate the significance of the injury claim. (*See id.*) For example, was this injury claim created internally as a way to record that Plaintiff may have been injured or was it submitted by Plaintiff? Did any part of the injury claim put Defendant on notice that a lawsuit may be imminent? Without more, Defendant failed to meet its burden of providing "specific and competent evidence" that the subject emails were created in anticipation of litigation. Defendant failed to point to a "definite shift" from acting in its ordinary course of business to acting in anticipation of litigation. For these reasons, the branch of Plaintiff's motion which seeks to compel the previously withheld emails is hereby granted.

### D. Demand #16

Demand #16 requests "[v]ideo footage which demonstrates the view of the surveillance camera which observes the entrance of the aisle in the Store where the Subject Accident occurred." (DE 19-1.) According to Plaintiff, Hahn testified the surveillance camera at issue is still located in the same place as it was on the date of the accident and Plaintiff contends it is entitled to "see what portion of the accident aisle was visible on video surveillance on the date of the accident." (DE 19.) Essentially, Plaintiff is requesting current-day video surveillance camera footage to try and see what might have been visible over two years agon on the date of the incident. (*See id.*)

In opposition, Defendant objects to the gathering new footage filmed more than two years after the incident and argues that newly obtained surveillance video is not relevant to the issues here.

The Court agrees. Defendant states, and Plaintiff does not contest, that Defendant has already produced video footage from the day of the incident. (DE 19, DE 20.) Indeed, Defendant provides that it has "produced every minute of footage in its possession that shows plaintiff on the date of the incident" and "has not withheld any video whatsoever." (DE 20.) According to Defendant, these include six videos, provided in its initial disclosures, show Plaintiff in the store on the date of the incident. (*Id.*) Plaintiff has not demonstrated how video footage taken today, showing what the store looks like now, is relevant to incident which happened just over two years ago. Therefore, the branch of Plaintiff's motion which seeks to compel current surveillance video footage is hereby denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion to compel is decided as follows:

1. With respect to Plaintiff's request for an order directing Defendant to respond without "boilerplate language," Plaintiff's motion is DENIED;

2. With respect to Demand #2 Plaintiff's motion is DENIED;

3. With respect to Demand #8, Plaintiff's motion is GRANTED; and

4. With respect to Demand #16, Plaintiff's motion is DENIED.

Dated: Central Islip, New York
　　　　November 9, 2022

　　　　　　　　　　　　　　　　　　　　　　　　　　S O   O R D E R E D:
　　　　　　　　　　　　　　　　　　　　　　　　　　/S/ *James M. Wicks*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　JAMES M. WICKS
　　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge